Nancy R. Giles (SBN 020163)
Laura C. Martinez (SBN 031486)
**GILES LAW, PLLC**
4808 N. 22nd St., Suite 200
Phoenix, AZ 85016
Tel: 602-222-5501
Email: ngiles@gileslegal.com
Email: lmartinez@gileslegal.com

Michael J. Broadbent (*pro hac vice*)
**COZEN O'CONNOR**
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: 215-665-4732
Email: mbroadbent@cozen.com

Attorneys for Plaintiff Columbus Life Insurance Company

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Columbus Life Insurance Company, | No. 2:21-cv-00734-DSH |
| Plaintiff, | |
| v. | **ANSWER TO COUNTERCLAIMS** |
| Wilmington Trust N.A., as securities intermediary | |
| Defendant. | |

Plaintiff Columbus Life Insurance Company ("Columbus Life"), by and through its undersigned counsel, hereby answers and responds to the Counterclaims of Defendant Wilmington Trust, N.A., as securities intermediary ("Wilmington Trust").

### Anwer to "COUNTERCLAIMS"

1. In November of 2003, Howard and Eunice Peterson (the "Insureds"), submitted an application for life insurance to Columbus Life Insurance Company ("Carrier"). The Application made clear that the owner and beneficiary of the proposed policy would be H&E Peterson Family Partnership, LLLP (the "Partnership"). The

Carrier agreed to insure the Petersons, and issued a "second to die" policy number CM5008425U carrying a $2,500,000 million death benefit (the "Policy"), with the Partnership as the initial owner and beneficiary.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life issued policy number CM5008425U on the lives of Howard and Eunice Peterson (the "Petersons") with a death benefit of $2,500,000 (the "Policy"), and that the initial owner and beneficiary was identified as the H&E Peterson Family Partnership, LLLP (the "Partnership") pursuant to a request in the application submitted for the Policy (the "Application") that the Partnership be so designated. It is denied that the Petersons "submitted" the Application. As alleged in the Complaint upon information and belief, on or around November 25, 2003, Reid S. Johnson and other individuals lacking an insurable interest in the Petersons submitted an application for life insurance to Columbus Life, purportedly executed by the Petersons. (Dkt. 1, Compl. ¶¶ 19-20.) Whether Columbus Life "agreed" to anything is a legal conclusion to which no response is required. To the extent a response is required, Columbus Life denies the allegation, because the Policy is void *ab initio* for the reasons set forth in the Complaint.

2. Under the Policy, the Carrier agreed to pay the Policy death benefit after both insureds had died.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that the Policy, if effective and enforceable, was a "second-to-die" type policy in which a death benefit, if paid, would be paid after the death of the second named insured. Whether Columbus Life "agreed" to anything and whether the death benefit is due and owing here are legal conclusions to which no response is required. To the extent a response is required, Columbus Life denies the allegation, because the Policy is void *ab initio* for the reasons set forth in the Complaint.

3. The Petersons have died; Securities Intermediary timely submitted a claim

2

for the death benefit under the Policy to the Carrier; and the Carrier has wrongfully failed to pay the death benefit due and owing. Instead, the Carrier commenced a time-barred lawsuit against Securities Intermediary seeking to rescind the Policy on the ground that the Policy is invalid and was procured as part of an illegal stranger originated life insurance ("STOLI") scheme, and, therefore, in violation of applicable insurable interest laws. But the Carrier's suit is specifically foreclosed by the Arizona Supreme Court's holding in *Nat'l Life & Cas. Ins. Co. v. Blankenbiller*, 89 Ariz. 253, 256, 360 P.2d 1030, 1032 (1961) ("every exception to incontestability not expressed in the statute itself is specifically barred as a defense to the policy after the expiration of the incontestability period.").

**RESPONSE:**

Admitted in part, denied in part. It is admitted that the Petersons are dead, admitted that Wilmington Trust submitted claims material, and admitted that Columbus Life initiated this action by way of filing a Complaint. Whether the claims material was complete and timely, and whether the Complaint includes actions which are time barred are legal conclusions to which no response is required. To the extent a response is required, Columbus Life denies the allegations, because the Policy is void *ab initio* for the reasons set forth in the Complaint. By way of further response, Columbus Life specifically denies that the Complaint is barred as a result of incontestability under *Nat'l Life & Casualty Insurance Co. v. Blankenbiller*, 89 Ariz. 253, 256, 360 P.2d 1030, 1032 (1961) or otherwise, because contracts which violates public policy and illegal contracts—like the Policy here—can never be enforced. *E.g.*, *H. Kress & Co. v. Evans*, 21 Ariz. 442, 449, 189 P. 625, 627 (1920).

4. Moreover, the Carrier has been aware of all of the facts that it now belatedly relies upon to seek rescission of the Policy, and demanded, received, and accepted premiums, and represented to Securities Intermediary in writing that the Policy was valid and enforceable, for years after having such knowledge.

**RESPONSE:**

Denied. As alleged in the Complaint, Columbus Life only recently investigated the claim and came to believe that the Policy was procured through illegal stranger-originated life insurance ("STOLI"). By way of further response, and by way of example only, the Securities and Exchange Commission statements cited in the Complaint regarding Johnson's unlawful GIS scheme were published more than a decade after the Policy issued. (*See* Dkt. 1, Compl. ¶ 11 (quoting SEC)).

5. What's more, Securities Intermediary had nothing to do with the procurement of the Policy or any of the alleged STOLI activity for which the Carrier now untimely seeks rescission. Rather, Securities Intermediary became the owner and beneficiary of record of the Policy, without any objection from the Carrier, years after the Policy had been issued. Securities Intermediary's client, a securities entitlement holder, acquired the Policy legitimately in the tertiary life insurance market as a bona fide purchaser for value, and retained Securities Intermediary to hold title to the Policy with the life insurance company.

**RESPONSE:**

Admitted in part, denied in part. It is admitted only that Wilmington Trust was identified later as the owner and beneficiary of the unlawful and unenforceable Policy at issue in this case. The remaining allegations are denied. At this time, Columbus Life is without knowledge or information sufficient to form a belief as to whether Wilmington Trust had any involvement with the procurement of the Policy, and as to the relationship between Wilmington Trust and its purported securities intermediary client beyond the facts alleged in the Complaint in paragraph 29, and thus any such allegation is denied and strict proof thereof is demanded.

6. This lawsuit seeks to put the Carrier's deceptive and unfair insurance trade practices to an end. It seeks compensatory and punitive damages, and applicable interest, for the Carrier's breach of contract and failure to pay the Policy death benefit and as damages for the Carrier's bad faith conduct.

4

**RESPONSE:**

Admitted in part, denied in part.  At this time, Columbus Life is without knowledge or information sufficient to form a belief as to Wilmington Trust's motivations, and such allegations are denied.  It is denied that Columbus Life has engaged in any "deceptive or unfair insurance trade practices" in this proceeding or in any other matter in which Wilmington Trust has an interest.  It is admitted only that the Counterclaim seeks certain damages on the basis of the causes of action as described therein.

## Answer to "THE PARTIES

7.      Securities Intermediary is the current owner and beneficiary of record of the Policy, as securities intermediary on behalf of its customer, a securities entitlement holder. Securities Intermediary is a national banking association organized and existing under federal law with its main office located in Wilmington, Delaware, as identified in its Articles of Association. Securities Intermediary maintains a principal place of business in Delaware. Securities Intermediary is not a citizen of Ohio for purposes of diversity jurisdiction.

**RESPONSE:**

Admitted in part, denied in part.  It is admitted that Wilmington Trust has been identified as the Policy's owner and beneficiary.  Whether the Policy is enforceable and whether and to what extent Wilmington Trust or any other party may claim the death benefit is a legal question, and Columbus Life asserted that the Policy is void *ab initio* and unenforceable.  Columbus Life does not dispute the jurisdictional facts alleged in this paragraph.  Beyond the facts alleged in the Complaint in paragraph 29, Columbus Life without knowledge or information sufficient to form a belief regarding Wilmington Trust's relationship with its purported customer, and thus any such allegations are denied and strict proof thereof is demanded.

8.      At all times herein Securities Intermediary acts solely as securities intermediary for a third-party investor, and does not act in its individual capacity. *See,*

5

*e.g.,* Ariz. Rev. Stat. Ann. § 47-8102(A)(14) (defining role of securities intermediary).

**RESPONSE:**

Denied. Whether Wilmington Trust acts solely as a Securities Intermediary is a legal conclusion to which no response is required. To the extent a response is required, Columbus Life denies such allegation as immaterial.

9. Based on the allegations in the Complaint, the Carrier is an Ohio corporation with its principal places of business in Ohio.

**RESPONSE:**

Admitted.

### Answer to "JURISDICTION & VENUE"

10. Based on the allegations in the Complaint, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties, and the amount in controversy exceeding $75,000, exclusive of interest and costs.

**RESPONSE:**

Admitted.

11. Based on the allegations in the Complaint, venue lies within this District under the provisions of 28 U.S.C. § 1391(a)(1), (a)(2), and 1391(b) because Carrier conducts business in the District of Arizona and a substantial part of the events and/or omissions giving rise to the bad faith claims against Carrier occurred within this District.

**RESPONSE:**

Denied. The Complaint alleges that venue is proper because a substantial part of the events giving rise to Columbus Life's claims occurred within this District. Columbus Life specifically denies that any bad faith occurred or that, if it did, that it occurred in this District.

### Answer to "FACTS"

12. On or about November 25, 2003, Howard and Eunice Peterson completed an application for the Policy and submitted it to the Carrier.

**RESPONSE:**

Denied. As alleged in the Complaint upon information and belief, on or around November 25, 2003, Reid S. Johnson and other individuals lacking an insurable interest in the Petersons submitted an application for life insurance to Columbus Life, purportedly executed by the Petersons. (Dkt. 1, Compl. ¶¶ 19-20.) The application involved an illegal human life wager effected by parties without an insurable interest on the lives of the Petersons. (*Id.* ¶ 19.)

13. The Carrier issued the Policy, back dating it with a policy date of October 26, 2003.

**RESPONSE:**

Admitted.

14. The Policy states "[t]his Policy is a contract between You [the Policy owner] and Us [Carrier] to insure the joint lives of the Insureds." D.E. 1-1 at 19 of 40.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that the quoted language is taken from the Policy. It is denied that such language is effective here because the Policy is void *ab initio.* It is further denied that the quoted language is complete, and, to the extent such language is effective or potentially effective, it must be read in its entirety and in context.

15. The Policy states that the "We [the Carrier] will pay the Death Benefit as described in the Payment of Proceeds section when We receive proof that both insureds died while this policy was in force, and any other proof that We may require in order to investigate the claim." D.E. 1-1 at 20 of 40.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that the quoted language is taken from the Policy. It is denied that such language is effective here because the Policy is void *ab initio.* It is further denied that the quoted language is complete, and, to the extent such language is effective or potentially effective, it must be read in its entirety and in

context.

16.     The Policy states that "We [Carrier] will not contest this policy to the extent of the Specified Amount after it has been in effect during both Insured's lifetimes for two years from the Policy Date." D.E. 1-1 at 34 of 40.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that the quoted language is taken from the Policy. It is denied that such language is effective here because the Policy is void *ab initio.* It is further denied that the quoted language is complete, and, to the extent such language is effective or potentially effective, it must be read in its entirety and in context. By way of further response, Columbus Life's claims in the Complaint are not barred by incontestability.

17.     The "Specified Amount" is defined in the Policy as the amount of insurance coverage the policy owner selected, as shown in the Policy Schedule. D.E. 1-1 at 17 of 40.

**RESPONSE:**

Admitted in part, denied in part. It is admitted the Policy includes a definition of "Specified Amount." It is denied that such language is effective here because the Policy is void *ab initio.* It is further denied that the quoted language is complete, and, to the extent such language is effective or potentially effective, it must be read in its entirety and in context.

18.     The Specified Amount of the Policy is $2,500,000. D.E. 1-1 at 4 of 40.

**RESPONSE:**

Admitted in part, denied in part. It is admitted the Policy includes a definition of "Specified Amount," and that $2,500,000 would be the Specified Amount if the Policy were effective. It is denied that such language is effective here because the Policy is void *ab initio.* It is further denied that the quoted language is complete, and, to the extent such language is effective or potentially effective, it must be read in its entirety and in context.

19.     Based on the allegations in the Complaint, on or about September 3, 2013,

8

the Carrier received and processed a request to change the owner and beneficiary of the Policy to Securities Intermediary.

**RESPONSE:**

Denied as stated. The Complaint alleges: "On or about September 3, 2013, the ownership and beneficiary designations in the Policy were changed again, this time to Wilmington Trust." (Dkt. 1, Compl. ¶ 26.)

20. Since 2013, Securities Intermediary has held the Policy in a securities account for the benefit of a customer, which, at all times, has been a securities entitlement holder. Securities Intermediary's current customer acquired the Policy legitimately in the tertiary life insurance market as a bona fide purchaser for value, and retained Securities Intermediary to hold title to the Policy with the life insurance company.

**RESPONSE:**

Admitted in part, denied in part. Columbus Life admits only the facts alleged in the Complaint in paragraph 29. All other allegations are denied, either because Columbus Life lacks knowledge or information sufficient to form a belief or because the allegations are legal conclusions, and strict proof thereof is demanded. By way of further response, Columbus Life specifically denies that Wilmington Trust or its purported customer "acquired the Policy legitimately in the tertiary life insurance market as a bona fide purchaser for value."

21. Neither Securities Intermediary, nor its customer, had any involvement in the original procurement of the Policy.

**RESPONSE:**

Denied. At this time, Columbus Life is without knowledge or information sufficient to form a belief as to the facts alleged in this paragraph. Such allegations are denied and strict proof thereof is demanded.

22. On or about January 17, 2018, Howard Peterson died.

**RESPONSE:**

Admitted.

23.    On or about May 1, 2020, Eunice Peterson died.

**RESPONSE:**

Admitted.

24.    On or about December 29, 2020, Securities Intermediary submitted a death claim to the Carrier under the Policy on behalf of the policy's beneficial owner.

**RESPONSE:**

Admitted in part, denied in part.  It is admitted that the Petersons are dead and that admitted Wilmington Trust submitted claims material.  On whose behalf Wilmington Trust acted is a legal conclusion to which no response is required.  To the extent a response is required, Columbus Life is without knowledge or information sufficient to form a belief as to the facts alleged in this paragraph beyond the allegations of paragraph 29 of the Complaint, and strict proof thereof is demanded.

25.    The Carrier has failed to pay the death claim.

**RESPONSE:**

Denied as stated.  Columbus Life has not paid a death claim because it has no obligation to do so.  The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest.

26.    According to the Carrier, it has "investigated" the death claim and "now believes" that the Policy was procured by strangers to the Petersons as part of a "STOLI scheme" and, therefore, the Policy lacked an insurable interest prior to and at its inception and was merely an unlawful wager on the Petersons' lives. D.E. 1 at ¶ 31. Significantly, all of the information to which the Carrier refers in support of this supposed determination – most notably, the identity of the Policy owner and beneficiaries and the involvement of a particular broker, Reid Johnson – is information that the Carrier has known long before Ms. Peterson's death. *Id*. at ¶¶ 9-11, 31. It is thus self-evident that the Carrier could have chosen to "investigate" and make these claims long ago, and it is quite possible that it did in fact learn all the facts that it alleges in the complaint years ago.

**RESPONSE:**

Admitted in part, denied in part.  It is admitted that the quoted language in this paragraph is drawn from the allegations of the Complaint, but those allegations must be ready in their entirety and in context, and any characterizations thereof are denied.   By way of further response, as alleged in the Complaint, Columbus Life only recently investigated the claim and came to believe that the Policy was procured through illegal STOLI.  It is denied that Columbus Life had significant information or that Columbus Life could have or did learn "all the facts . . . years ago."  By way of example only, the Securities and Exchange Commission statements cited in the Complaint regarding Johnson's unlawful GIS scheme were published more than a decade after the Policy issued.  (*See* Dkt. 1, Compl. ¶ 11 (quoting SEC)).

27.    Between the Policy's issuance in 2003 and the death of Eunice Peterson on May 1, 2020, the Carrier collected at least $1,375,601.95 in premium payments on the Policy. Throughout that time, the Carrier regularly represented, in writing, to Securities Intermediary that the Policy was valid and in force; and repeatedly acknowledged Securities Intermediary's status as owner and beneficiary.

**RESPONSE:**

Admitted in part, denied in part.  It is admitted that Columbus Life collected premiums on the Policy.  Whether Columbus Life made any "representations" that "the Policy was valid and in force" or that Columbus Life "repeatedly acknowledged [Wilmington Trust's] status as owner and beneficiary" involve legal questions to which no response is required.  To the extent a response is required, Columbus Life denies that it made any representations which could overcome the unenforceability of the Policy or which could give rise to a right to relief in Wilmington Trust or any other entity or person.

28.    Following the Insureds' deaths, the Carrier was mistakenly paid at least $235,554.13 in premium in connection with the Policy.

**RESPONSE:**

Admitted.

29. The Carrier has agreed to return all premiums paid in connection with the Policy that were paid after both Insureds had died.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life received premiums from Wilmington Trust after the death of Eunice Peterson. Columbus Life is without knowledge or information as to whether Wilmington Trust made a mistake in paying those premiums.

30. To date, the Carrier has failed to return any premium, even the portion paid after the Insureds had died.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life agreed to return premiums received after the death of Eunice Peterson and Howard Peterson, but it is denied that Columbus Life agreed to or must return premiums received after the deaths of the Petersons if those premiums were paid for coverage during the Petersons' lifetime, and it is denied that Columbus Life has breached any obligation to pay those premiums by any date certain.

**RESPONSE:**

31. The Carrier's past conduct of sending Securities Intermediary annual statements, illustrations, and premium and lapse notices in and after 2013 and until a death claim was submitted to it under the Policy in 2020, each of which represented to Securities Intermediary, and its customer, that the Carrier believed the Policy to be valid and enforceable, are past acts that were committed with the intent to induce Securities Intermediary and the securities entitlement holders to believe that the Carrier considered the Policy to be valid and enforceable, and to induce Securities Intermediary and its client to continue to pay premiums for the Policy.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life has not yet returned such premiums, but any characterization or implication that Columbus Life has

engaged in bad faith is denied.   By way of further response, Columbus Life has not dealt with Wilmington Trust in bad faith, and instead it has worked in good faith to resolve this issue.

32.    When the Carrier sent each written communication to Securities Intermediary representing that it (the Carrier) considered the Policy to be valid and enforceable, it did so under false pretenses. The Carrier sent each of these written communications intending to induce Securities Intermediary and its client to pay more premium for the Policy to illegitimately enrich the Carrier, even as the Carrier never intended to honor the Policy. For nearly a decade, based on the Carrier's insidious conduct, the Carrier has put Securities Intermediary in a "Heads I [the Carrier] Win, Tails You [Securities Intermediary] Lose" situation.

**RESPONSE:**

Admitted in part, denied in part.  It is admitted that Columbus Life generates and mails certain documents associated with the Policy.  Whether any such documents could or did make representations or could or did reflect Columbus Life's "intent," what it "believed," or as an "inducement" are legal questions to which no response is required. To the extent a response is required, it is denied that any such documents received by Wilmington Trust made representations as to what Columbus Life "believed," denied that any such documents actually sent were sent with an "intent" other than to send such documents, and denied that any such documents were an "inducement" to Wilmington Trust or any other party.  By way of further response, Columbus Life denies that it engaged in any "insidious" conduct during the time that Wilmington Trust hoped for a quick profit from the speedy deaths of the Peterson or at any other time.

33.    As noted in a Memorandum Opinion issued on May 17, 2019 in *Sun Life Assurance Company of Canada v. U.S. Bank National Association*, No. 1:17-cv-00075-LPS (D. Del.) (D.E. 251), wherein the court had determined that the subject life policy was invalid but nevertheless allowed the policy owner's claims for unfair trade practices act violations and a theory of promissory estoppel to proceed to trial under circumstances

identical to those at issue here:

> [T]he Court concludes that a reasonable factfinder could find that Sun Life engaged in an unfair and/or deceptive act in connection with its handling of this Policy. These conclusions arise from the Court's determination that, based on all the circumstances of the case, a reasonable jury could find that Sun Life unfairly, unethically, and unscrupulously misrepresented the state of the Policy to induce U.S. Bank . . . to continue making hundreds of thousands of dollars in premium payments, when, in fact (as a reasonable jury could find) Sun Life had already determined that it would not honor the Policy. For the same reasons, a reasonable jury could find that Sun Life acted deceptively in making the statements it made, and thereby caused U.S. Bank to act differently than it otherwise would have. Even accepting, *arguendo*, that Sun Life had no affirmative obligation to disclose to U.S. Bank its internal beliefs and intent, Sun Life's internal beliefs and intent may still be relevant to the factual question of whether Sun Life made willful representations that constitute an unfair and/or deceptive act.

> \*    \*    \*

> In the Court's view, it would not be unreasonable for the jury . . . to find that Sun Life had decided the Policy was STOLI and thereby void, and had further decided it would not honor the Policy, yet continued to make representations that the Policy was in "good standing." Essentially, the parties dispute whether it would be reasonable for a jury confronted with this evidence, and taking it all in the light most favorable to U.S. Bank, to find that Sun Life misrepresented the state of the Policy in an effort to induce U.S. Bank to continue paying premiums. While reasonable minds could well differ as to the reasonableness of such inference, this Court concludes that it would be reasonable for a jury to reach such a finding.

*Sun Life Assurance Company of Canada v. U.S. Bank National Association*, No. 1:17-cv-00075-LPS (D. Del.) (D.E. 251) (Mem. Opin.), at 4-7 (footnotes omitted).

**RESPONSE:**

Denied. Paragraph 33 is effectively a legal conclusion as it summarizes and quotes from a decision in United States District Court for the District of Delaware, and no response is required. By way of further response, the decision cited by Wilmington Trust should be read in its entirety and in context for its meaning, and any characterization of its findings or import are denied. Moreover, the decision has no bearing on this matter, as it held only that a *different* insurer in a *different* jurisdiction operating under *different* laws *could* be required to face a jury on certain claims. Wilmington Trust has no law or facts supporting its position here.

34.    Following a six day jury trial in *Sun Life Assurance Company of Canada v. U.S. Bank National Association*, the jury found in favor of U.S. Bank on its promissory

14

estoppel claim. The trial court subsequently denied Sun Life's post-trial motion challenging the verdict, concluding as follows: "The jury had ample evidence from which it could have reasonably found that Sun Life's promise to pay, if premiums continued to be paid, to have been reasonably certain and definite." *Sun Life Assurance Company of Canada v. U.S. Bank National Association*, No. 1:17-cv-00075-LPS (D. Del.) (D.E. 296) (Dec. 30, 2019 Mem. Order), at 4. As a result, the Delaware federal district court ordered that "U.S. Bank will be awarded restitution damages totaling $1,923,068 (the total amount of premiums paid to Sun Life on the Sol Policy), plus prejudgment interest . . . ." *Id.* at 5.

**RESPONSE:**

Denied. Paragraph 34 is effectively a legal conclusion as it summarizes and quotes from a decision in United States District Court for the District of Delaware, and no response is required. By way of further response, the decision cited by Wilmington Trust should be read in its entirety and in context for its meaning, and any characterization of its findings or import are denied. Moreover, the decision has no bearing on this matter, as it held only that a *different* insurer in a *different* jurisdiction operating under *different* laws was found by a jury to have committed certain acts. Wilmington Trust has no law or facts supporting its position here.

35. The same exact conduct that caused the federal Delaware court in *Sun Life Assurance Company of Canada v. U.S. Bank National Association* to allow U.S. Bank's unfair trade practices act and promissory estoppel claims to go to the jury exist here.

**RESPONSE:**

Denied. Paragraph 35 is effectively a legal conclusion as it summarizes and quotes from a decision in United States District Court for the District of Delaware, and no response is required. By way of further response, the decision cited by Wilmington Trust should be read in its entirety and in context for its meaning, and any characterization of its findings or import are denied. Moreover, the decision has no bearing on this matter, as it involved a *different* insurer in a *different* jurisdiction operating under *different* laws, and Wilmington Trust has no law or facts supporting its position here.

## Answer to "FIRST CAUSE OF ACTION (Breach of Contract)"

36.     Securities Intermediary repeats and realleges each and every allegation above as it fully set forth herein.

**RESPONSE:**

Columbus Life incorporates every response set forth herein and every allegation set forth in its Complaint as though fully set forth herein.

37.     The Policy, by its terms, provides that the Carrier shall make payment of the Policy's death benefit once it received "proof that both insureds died while this policy was in force, and any other proof that We [the Carrier] may require in order to investigate the claim;" and that the Carrier shall be barred from challenging the validity of the Policy after it has been in force during both of the insureds' lifetimes for two years from its Policy Date.

**RESPONSE:**

Admitted in part, denied in part.  Paragraph 37 is a legal conclusion to which no response is required.  To the extent a response is required, it is admitted that the quoted language is taken from the Policy.  It is denied that such language is effective here because the Policy is void *ab initio*.  It is further denied that the quoted language is complete, and, to the extent such language is effective or potentially effective, it must be read in its entirety and in context.  By way of further response, Columbus Life specifically denies that the Complaint is barred as a result of incontestability under *Nat'l Life & Casualty Insurance Co. v. Blankenbiller*, 89 Ariz. 253, 256, 360 P.2d 1030, 1032 (1961) or otherwise, because contracts which violates public policy and illegal contracts—like the Policy here—can never be enforced.  *E.g.*, *H. Kress & Co. v. Evans*, 21 Ariz. 442, 449, 189 P. 625, 627 (1920).

38.     Following the Petersons' deaths, Securities Intermediary sent the Carrier proof of the Petersons' deaths, and otherwise provided the Carrier with all other information that it needed in order to process the death claim on behalf of the Policy's beneficial owner.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that the Petersons are dead, admitted that Wilmington Trust submitted claims material, and admitted that Columbus Life initiated this action by way of filing a Complaint. Whether the claims material was complete and timely, and whether the Complaint includes actions which are time barred are legal conclusions to which no response is required. To the extent a response is required, Columbus Life denies the allegations, because the Policy is void *ab initio* for the reasons set forth in the Complaint.

39. The Carrier has failed to pay the Policy's death benefit to Securities Intermediary.

**RESPONSE:**

Denied as stated. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest.

40. The Carrier took no action to rescind and/or contest the validity of the Policy until after receiving the death claim.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that the Petersons are dead, admitted that Wilmington Trust submitted claims material, and admitted that Columbus Life initiated this action by way of filing a Complaint. It is further admitted that Columbus Life did not rescind the Policy or contest its validity prior to the deaths of Howard and Eunice Peterson. Whether the claims material was complete and timely, and whether the Complaint includes actions which are time barred are legal conclusions to which no response is required. To the extent a response is required, Columbus Life denies the allegations, because the Policy is void *ab initio* for the reasons set forth in the Complaint.

41. The Carrier therefore breached the terms of the Policy by failing to pay the Policy's death benefit and applicable interest to Securities Intermediary.

**RESPONSE:**

Denied. Paragraph 41 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest.

42. The Carrier further breached the terms of the Policy by commencing its Arizona lawsuit challenging the validity of the Policy, even though the Policy had been in force during the Insureds' lifetimes for more than two years from the Policy's issue date.

**RESPONSE:**

Denied. Paragraph 42 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest. By way of further response, Columbus Life specifically denies that the Complaint is barred as a result of incontestability under *Nat'l Life & Casualty Insurance Co. v. Blankenbiller*, 89 Ariz. 253, 256, 360 P.2d 1030, 1032 (1961) or otherwise, because contracts which violates public policy and illegal contracts—like the Policy here—can never be enforced. *E.g.*, *H. Kress & Co. v. Evans*, 21 Ariz. 442, 449, 189 P. 625, 627 (1920).

43. Securities Intermediary has performed all its duties and obligations under the Policy.

**RESPONSE:**

Denied. Paragraph 43 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. There are no obligations under the Policy because the Policy is not in force or enforceable. The Policy is void *ab initio* for the reasons set forth in the Complaint.

44.   As a result of the aforementioned breaches by the Carrier, Securities Intermediary (and its customer on behalf of which it owns the Policy) has been damaged in a sum to be determined by the trier of fact after trial, which damages include, but are not limited to, $2,500,000, representing the principal amount of the Policy's death benefit, plus applicable interest, as well as the fees and costs that Plaintiff has incurred and will continue to incur as a result of the Carrier's wrongful conduct in belatedly challenging the validity of the Policy.

**RESPONSE:**

Denied.  Paragraph 42 is a legal conclusion to which no response is required.  To the extent a response is required, that allegation is denied.  Columbus Life has not paid a death claim because it has no obligation to do so.  The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest. By way of further response, Columbus Life specifically denies that Wilmington Trust has suffered any damages, denies that any losses are compensable, and denies that Columbus Life has any liability to Wilmington Trust.

### Answer to "SECOND CAUSE OF ACTION (Bad Faith)"

45.   Securities Intermediary repeats and realleges each and every allegation above as if fully set forth herein.

**RESPONSE:**

Columbus Life incorporates every response set forth herein and every allegation set forth in its Complaint as though fully set forth herein.

46.   The Carrier issued the Policy on October 26, 2003.

**RESPONSE:**

Admitted in part, denied in part.  It is admitted that Columbus Life issued the Policy.  Any implication that the Policy is enforceable is denied.

47.   Securities Intermediary is the record owner and beneficiary of the Policy with the Carrier.

19

**RESPONSE:**

Denied as stated. It is admitted that Wilmington Trust is identified as the owner and beneficiary. It is denied that Wilmington Trust has any ownership or beneficiary interest in the Policy because the Policy is unenforceable and void *ab initio.*

48. Following the Insureds' deaths, Securities Intermediary timely submitted a death claim to the Carrier on behalf of the Policy's beneficial owner.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that the Petersons are dead, admitted that Wilmington Trust submitted claims material, and admitted that Columbus Life initiated this action by way of filing a Complaint. It is further admitted that Columbus Life did not rescind the Policy or contest its validity prior to the deaths of Howard and Eunice Peterson. Whether the claims material was complete and timely is a legal conclusion to which no response is required. To the extent a response is required, Columbus Life denies the allegations, because the Policy is void *ab initio* for the reasons set forth in the Complaint.

49. Securities Intermediary has performed all of its obligations under the Policy.

**RESPONSE:**

Denied. Paragraph 49 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. There are no obligations under the Policy because the Policy is not in force or enforceable. The Policy is void *ab initio* for the reasons set forth in the Complaint.

50. The Carrier has intentionally failed to pay the death claim.

**RESPONSE:**

Denied. Paragraph 50 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an

20

insurable interest.

51.     The Carrier (i) lacks any reasonable basis on which to deny Securities Intermediary's claim for the Policy death benefit, and (ii) knows—or has recklessly disregarded the existence—of such absence of a reasonable basis on which to deny Securities Intermediary's claim.

**RESPONSE:**

Denied.  Paragraph 51 is a legal conclusion to which no response is required.  To the extent a response is required, that allegation is denied.  Columbus Life has not paid a death claim because it has no obligation to do so.  The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest.  By way of further response, Columbus Life denies that it lacks a reasonable basis for refusing to pay the death benefit.

52.     The Carrier lacks any reasonable basis for denying Securities Intermediary's claim for the Policy death benefit because the Carrier has knowingly and intentionally: (a) refused to pay Securities Intermediary's death claim without conducting a reasonable investigation and/or based on incorrect assertions of fact and in reliance on facts of which it has been aware, but has chosen to ignore, in collecting and accepting premium payments on the Policy; (b) represented that the Policy was valid and enforceable, and demanded that additional premium payments be made by Securities Intermediary to the Carrier to keep the Policy in force, all the while intending to seek to rescind the Policy after receiving a death claim and intending also to make a claim in court to keep all premiums paid for the Policy; (c) forced Securities Intermediary to litigate this action in order to compel the Carrier's performance under the Policy; (d) failed to adopt and implement reasonable standards applicable to the Policy for prompt investigation and payment of claims; (e) lied to Securities Intermediary regarding its claim-handling; (f) failed to promptly pay the death claim even though the Carrier's liability is clear; (g) failed to return unearned premium paid after the Insureds had died.

**RESPONSE:**

Denied. Paragraph 52 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest. By way of further response, Columbus Life incorporates the responses provided herein regarding the alleged acts described in paragraph 50, and thus denies such allegations. All other such allegations are denied, and strict proof thereof is demanded.

53. Securities Intermediary (and its customer on behalf of which it owns the Policy) has directly suffered a loss of money or property caused by the Carrier's unfair, unreasonable and deceptive acts or practices. The Carrier has failed and refused to pay to Securities Intermediary the $2,500,000 death benefit promised in the Policy, even though the Carrier has been paid at least $1,611,156.08 in premium.

**RESPONSE:**

Denied. Paragraph 53 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest. By way of further response, Columbus Life specifically denies that Wilmington Trust has suffered any damages, denies that any losses are compensable, and denies that Columbus Life has any liability to Wilmington Trust.

54. The Carrier has also failed to return Policy premium paid by Securities Intermediary, including premium that it admits were paid to the Carrier after the Insureds' had died. D.E. 1 at ¶ 29.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life agreed to return premiums received after the death of Eunice Peterson and Howard Peterson, but it is denied that Columbus Life agreed to or must return premiums received after the deaths

of the Petersons if those premiums were paid for coverage during the Petersons' lifetime, and it is denied that Columbus Life has breached any obligation to pay those premiums by any date certain.

55. The Carrier's unfair or deceptive acts or practices described above were intentional or knowing violations. The Carrier knew for years and knows now that it has no legitimate basis for refusing to pay the Securities Intermediary's death claim, and willfully misrepresented that it would do so.

**RESPONSE:**

Denied. Paragraph 55 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest. By way of further response, Columbus Life denies that it engaged in any deceptive or unfair practices, denies that it lacks a legitimate basis for its decisions, and denies that it made any misrepresentations—willful or otherwise.

### Answer to "THIRD CAUSE OF ACTION (Promissory Estoppel)"

56. Securities Intermediary repeats and realleges each and every allegation above as if fully set forth herein.

**RESPONSE:**

Columbus Life incorporates every response set forth herein and every allegation set forth in its Complaint as though fully set forth herein.

57. The Carrier issued the Policy on October 26, 2003.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life issued the Policy. Any implication that the Policy is enforceable is denied.

58. The Carrier, with full knowledge that Securities Intermediary was the Policy's owner and beneficiary of record, represented that the Policy was valid and in force, and induced Securities Intermediary (and its customer on behalf of which it owns

23

the Policy) to pay the Carrier substantial premiums on the Policy, even though the Carrier had already determined that it would challenge the Policy in court rather than honor it and to seek to retain all premiums paid for the Policy.

**RESPONSE:**

Denied. Paragraph 58 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest. By way of further response, Columbus Life denies that it engaged in any deceptive or unfair practices, denies that it lacks a legitimate basis for its decisions, and denies that it made any misrepresentations—willful or otherwise.

59. The Carrier accepted premium payments on the Policy and otherwise treated it as if it was valid and enforceable at all times prior to receiving the premiums from Securities Intermediary.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life received premium payments on the Policy during and after the lifetimes of the Petersons. It is denied that accepting those premiums represented that the Policy was in force or that accepting those premiums can prevent the Policy from being recognized as an illegal human life wager issued for the benefit of others without an insurable interest in the lives of the Petersons, and is thus void *ab initio* and unenforceable.

60. The Carrier has acted in a manner that has caused Securities Intermediary (and its customer on behalf of which it owns the Policy) to reasonably believe that the Policy was a valid and enforceable life insurance policy for which the death benefit would be duly paid upon the death of the Policy's insured because the Carrier: issued the Policy; accepted premium for the Policy; and otherwise treated the Policy as if it was valid and enforceable at all times prior to receiving the death claim.

**RESPONSE:**

Denied.  Paragraph 60 is a legal conclusion to which no response is required.  To the extent a response is required, that allegation is denied.  Columbus Life has not paid a death claim because it has no obligation to do so.  The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest.  By way of further response, Columbus Life denies that it engaged in any deceptive or unfair practices, denies that it lacks a legitimate basis for its decisions, and denies that it made any misrepresentations—willful or otherwise.  Wilmington Trust had a duty to determine for itself whether it believed the Policy was enforceable, and it had (or should have had) sufficient information to form such a decision independent of any statements by Columbus Life.

61.     The Carrier took no action to rescind and/or contest the validity of the Policy until after receiving the death claim.

**RESPONSE:**

Admitted in part, denied in part.  It is admitted that the Petersons are dead, admitted that Wilmington Trust submitted claims material, and admitted that Columbus Life initiated this action by way of filing a Complaint.  It is further admitted that Columbus Life did not rescind the Policy or contest its validity prior to the deaths of Howard and Eunice Peterson.  Whether the claims material was complete and timely, and whether the Complaint includes actions which are time barred are legal conclusions to which no response is required.  To the extent a response is required, Columbus Life denies the allegations, because the Policy is void *ab initio* for the reasons set forth in the Complaint.

62.     Securities Intermediary's (and its customer on behalf of which it owns the Policy) belief that the Policy was valid and enforceable was reasonable and a foreseeable result of the Carrier's conduct.

**RESPONSE:**

Denied.  Columbus Life lacks knowledge or information sufficient to form a belief as to the believes of Wilmington Trust or its purported customer other than that

Wilmington Trust and its purported customer are demanding that Columbus Life pay them millions of dollars despite that the Policy is illegal and against public policy. Whether such conduct was foreseeable or reasonable is a legal question to which no response is required. To the extent a response is required, Wilmington Trust and its purported customer appear to believe that the Policy should be enforceable even if it is illegal and against public policy, an unsupported position this Court should not endorse. Any allegations as to Wilmington Trust and its purported customer are denied and strict proof thereof is demanded.

63. The Carrier has been aware of the facts that it contends justify a rescission of the Policy (and/or a declaration that the Policy is void) either before it issued the Policy, or after it issued the Policy, but well before it received the death claim and well before it commenced its lawsuit to rescind and/or void the Policy and keep all premiums paid.

**RESPONSE:**

Denied. As alleged in the Complaint, Columbus Life only recently investigated the claim and came to believe that the Policy was procured through illegal stranger-originated life insurance ("STOLI"). By way of further response, and by way of example only, the Securities and Exchange Commission statements cited in the Complaint regarding Johnson's unlawful GIS scheme were published more than a decade after the Policy issued. (*See* Dkt. 1, Compl. ¶ 11 (quoting SEC).)

64. The Carrier filed its lawsuit alleging that the Policy is void.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life filed a Complaint asking this Court to declare that the Policy was, is, and always has been void *ab initio* as an illegal human life wager issued for the benefit of others lacking an insurable interest in the lives of the Petersons. Any implication that such action was impermissible, wrongful, or harmful to Wilmington Trust is denied, and strict proof thereof is demanded.

65. As a result of the Carrier's conduct, Securities Intermediary (and its customer on behalf of which it owns the Policy) has been damaged in a sum to be

determined by the trier of fact after trial, which damages include, but are not limited to, $2,500,000, representing the principal amount of the Policy's death benefit, plus applicable interest, as well as the fees and costs Plaintiff has incurred and will continue to incur as a result of the Carrier's wrongful conduct in challenging the validity of the Policy.

**RESPONSE:**

Denied. Paragraph 65 is a legal conclusion to which no response is required. To the extent a response is required, that allegation is denied. Columbus Life has not paid a death claim because it has no obligation to do so. The Policy is void *ab initio* and unenforceable as an illegal human life wager issued for the benefit of parties without an insurable interest. By way of further response, Columbus Life specifically denies that Wilmington Trust has suffered any damages, denies that any losses are compensable, and denies that Columbus Life has any liability to Wilmington Trust

### Answer to "FOURTH CAUSE OF ACTION (Unjust Enrichment)"

66.     Securities Intermediary repeats and realleges each and every allegation above as if fully set forth herein.

**RESPONSE:**

Columbus Life incorporates every response set forth herein and every allegation set forth in its Complaint as though fully set forth herein.

67.     The Carrier alleges that the Policy is void.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life filed a Complaint asking this Court to declare that the Policy was, is, and always has been void *ab initio* as an illegal human life wager issued for the benefit of others lacking an insurable interest in the lives of the Petersons. Any implication that such action was impermissible, wrongful, or harmful to Wilmington Trust is denied, and strict proof thereof is demanded.

68.     All premiums due on the Policy have been timely and fully paid, and the Carrier has received a total amount of at least $1,611,156.08 in premium payments on the

Policy.

**RESPONSE:**

Admitted in part, denied in part. It is admitted that Columbus Life received premium payments, but it is denied that such payments created coverage or made enforceable the unenforceable and void *ab initio* Policy.

69. To the extent the Policy is somehow void, which claim is invalid for the reasons set forth above, no coverage would have ever attached and, therefore, the premiums paid to the Carrier in connection with the Policy over the past 18 years would not have been earned.

**RESPONSE:**

Denied. The Policy was, is, and always has been void *ab initio* as an illegal human life wager issued for the benefit of others lacking an insurable interest in the lives of the Petersons. Whether Columbus Life cannot retain premiums is a legal question to which no response is required. To the extent a response is required, such allegations are denied, because the Court must leave the parties as they are found to avoid enforcing an unenforceable and illegal agreement.

70. Under such circumstances, it would be inequitable for the Carrier to retain any of the premiums paid to it in connection with the Policy.

**RESPONSE:**

Denied. The Policy was, is, and always has been void *ab initio* as an illegal human life wager issued for the benefit of others lacking an insurable interest in the lives of the Petersons. Whether Columbus Life cannot retain premiums is a legal question to which no response is required. To the extent a response is required, such allegations are denied, because the Court must leave the parties as they are found to avoid enforcing an unenforceable and illegal agreement, and equity cannot save an illegal agreement.

Plaintiff Columbus Life Insurance Company denies any and all allegations in the Counterclaims that are not specifically admitted herein.

## AFFIRMATIVE DEFENSES

1.     Defendant's counterclaims are barred in whole or in part by the doctrines of waiver, estoppel, laches, *in pari delicto*, or failure to mitigate.  Defendant knew or should have known of the facts alleged, and Defendant's conduct bars its claims.

2.     Defendant's counterclaims are barred in whole or in part by illegality.

3.     Plaintiff Columbus Life Insurance Company reserves the right to amend this Answer to add additional affirmative defenses as applicable.


**WHEREFORE,** Plaintiff Columbus Life Insurance Company hereby demands that the Court enter judgment in its favor on all counts in its Complaint and in its favor on all counts in the Counterclaims of Defendant Wilmington Trust, N.A, as securities intermediary, granting the relief set forth and requested in Plaintiff Columbus Life Insurance Company's Complaint.


DATED this 24th day of August, 2021.

GILES LAW, PLLC


By /s/ Nancy R. Giles
   Nancy R. Giles (SBN 020163)
   Laura C. Martinez (SBN 031486)
   4808 N. 22nd St., Ste. 200
   Phoenix, AZ 85016
   Phone: 602-222-5501
   Email: ngiles@gileslegal.com
   Email: lmartinez@gileslegal.com

COZEN O'CONNOR
   Michael J. Broadbent (*pro hac vice*)
   1650 Market Street, Suite 2800
   Philadelphia, PA 19103
   Tel: 215-665-4732
   Email: mbroadbent@cozen.com

   Attorneys for Plaintiff

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24th, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System

*/s/Laura Daniel*