Nancy R. Giles (SBN 020163)
Laura C. Martinez (SBN 031486)
GILES LAW, PLLC
4808 N. 22nd St., Suite 200
Phoenix, AZ 85016
Tel: 602-222-5501
Email: ngiles@gileslegal.com
Email: lmartinez@gileslegal.com

Michael J. Broadbent (*pro hac vice*)
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel: 215-665-4732
Email: mbroadbent@cozen.com

*Attorneys for Plaintiff Columbus Life Insurance Company*

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Columbus Life Insurance Company,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Wilmington Trust N.A., as securities intermediary<br><br>　　　　　Defendant. | No. 2:21-cv-00734-DSH<br><br>**PLAINTIFF COLUMBUS LIFE INSURANCE COMPANY'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT WILMINGTON TRUST N.A., AS SECURITIES INTERMEDIARY** |

Plaintiff, Columbus Life Insurance Company ("Columbus Life"), by and through its undersigned counsel, hereby submits this opposition to the Motion for Judgment on the Pleadings of Defendant, Wilmington Trust, N.A., as Securities Intermediary ("Wilmington Trust"), pursuant to Fed. R. Civ. P. 12(c) (ECF No. 41).

## I.  INTRODUCTION

Plaintiff, Columbus Life, asks this Court to issue an order recognizing that a stranger-originated life insurance ("STOLI") policy issued on the lives of two Arizona residents (the "Policy") is void *ab initio* as an illegal life insurance wagering contract in violation of A.R.S. § 20-1104(A) and for lacking an insurable interest. Under the laws of most jurisdictions,

including Arizona, such wagering transactions are void *ab initio* and of no effect. *See, e.g., Gristy v. Hudgens,* 203 P.2d 569 (Ariz. 1922) ("*Gristy*"); *San Francisco Sec. Corp. v. Phoenix Motor Corp.,* 220 P.2d 229 (Ariz. 1923); *see also* A.R.S. § 20-1104(A) ("[N]o person shall procure or cause to be procured any insurance contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, at the time when the contract was made, an insurable interest in the individual insured.").

Speculators have sought to use insurance to wager on the lives of strangers for hundreds of years, and although the Policy here was procured pursuant to a modern-day STOLI scheme, the legal principles and result are the same. *See, e.g.*, *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059, 1069 (Del. 2011) ("*Price Dawe*") (noting that life wagering has existed "[s]ince the initial creation of life insurance" and explaining that modern-day STOLI policies are void ab *initio*); *Sun Life v. Wells Fargo*, 238 N.J. 157, 164 (2019) ("*Bergman*") (similar).

The Policy here was procured as part of a scheme targeting senior citizens living in and around Sun City, Arizona, in which the proponents would cause policies to issue on the lives of senior citizens who neither wanted nor needed insurance, all for the benefit of stranger-investors seeking only to profit on the life and eventual death of each insured.

Wilmington Trust's Motion for Judgment on the Pleadings ("Motion") is an effort to escape the consequences of this illegal transaction, and this Court should refuse the invitation to make new Arizona law to favor those who seek to profit on human life wagering. Echoing other STOLI investors' unsuccessful arguments in cases nationwide, Wilmington Trust argues that the Policy's incontestability provision bars Columbus Life from "contest[ing] the policy" after it has been in effect for two years. Complaint, ECF No. 1, ("Complaint") Ex. A, pp. 21–22. In so arguing, however, Wilmington Trust ignores the obvious: a STOLI policy is void *ab initio* under Arizona law, and thus, it is no contract at all. As a result, the Policy never came into effect, and the terms appearing in the Policy document—including the incontestability clause cited by Wilmington Trust—are neither

binding nor enforceable on the parties. The Motion should be denied accordingly.

## II.    STATEMENT OF FACTS

This action concerns a $2.5 million, second to die, life insurance policy on the lives of Howard and Eunice Peterson (the "Petersons") that was procured from Columbus Life in or around 2003 and 2004 by an individual named Reid Johnson and others, acting not for the Petersons or their family or for a legitimate insurance purpose, but to benefit themselves. Complaint ¶¶ 16–18.

In the Complaint, Columbus Life alleges that Johnson and others procured this STOLI policy as part of a "Guaranteed Income Strategy" ("GIS") scheme, which the United States Securities and Exchange Commission, in its investigation of Johnson, described as an "insurance arbitrage strategy involving the purchase of a single premium immediate annuity [SPIA] and life insurance policy" for the benefit of investors. *Id.* ¶ 11. On or around November 25, 2003, Johnson and the others submitted an application for life insurance to Columbus Life, purportedly executed by the Petersons. *Id.* ¶ 20. Relying on this application and related documents that were submitted, Columbus Life issued an Arizona life insurance policy, with number CM5008425U, on the lives of the Petersons. *Id.* ¶ 22. The initial "Policy Date" was set as October 26, 2003. *Id*. The first premium was paid on the policy on or about May 6, 2004 in the amount of $81,525. *Id.* ¶ 23. Upon information and belief, the source of this and other premium payments on the Policy was not the insureds (*i.e.*, the Petersons) but instead others who lacked an insurable interest in the insureds. *Id.* ¶ 24.

The policy document issued by Columbus Life states:
> ***Limits on Our Contesting This Policy***
> No statement will be used in contesting this policy unless it is in an application or supplemental application and a copy of such application is attached to this policy. . . .
>
> We will not contest this policy to the extent of the Specified Amount after it has been in effect during both Insureds' lifetimes for two years from the Policy Date. . . .

Complaint, Ex. A, p.21. The "Specified Amount" refers to the $2,500,000 death benefit. *Id.*, p.3. Since the "Policy Date" was October 26, 2003, the contestability period (if it applied) expired on October 26, 2005.

As part of a likely effort to conceal the scheme discussed above from Columbus Life and avoid an insurer challenge during the contestability period, the ownership and beneficiary designations on the policy were changed to Church Street Nominees, Ltd. only after the expiration of that period. Complaint ¶ 25.

On or about September 3, 2013, the ownership and beneficiary designations in the Policy were changed again, this time to Wilmington Trust. *Id.* ¶ 26.

Howard and Eunice Peterson died in 2018 and 2020, respectively, and Wilmington Trust made a claim for the death benefit. *Id.* ¶¶ 26–30. In response, Columbus Life investigated the claim and now believes that the Policy was procured by Johnson and others through the GIS STOLI scheme and that, under Arizona law, the Policy lacked an insurable interest prior to and at its inception and was void *ab initio* because it was a mere wager on the Petersons' lives. *Id.* ¶ 31.

As a result, Columbus Life filed this action for a declaratory judgment "that the Policy was an illegal wagering contract that violated Arizona law, thus rendering the Policy void *ab initio*, meaning that the Policy never came into existence," and "that the Policy lacked an insurable interest because it was procured by and for the benefit of strangers without any insurable interest under Arizona law." *Id.* ¶¶ 37, 41.

On July 14, 2021, Wilmington Trust filed its Answer and Counterclaims. ECF No. 8. Five months later, on December 17, 2021, Wilmington Trust filed this motion for judgment on the pleadings arguing that the Complaint must be dismissed "[b]ecause the policy has been incontestable since 2005." Br. 2.

### III. ARGUMENT

Arizona law is clear: policies lacking insurable interest are considered illegal and in violation of public policy, *Gristy* 203 P. at 572, and contracts that violate public policy "are not contracts, but unlawful agreements which are void in their inception." *San Francisco*

4

*Sec. Corp.*, 220 P. at 232; *see also Landi v. Arkules*, 835 P.2d 458, 468 (Ariz. Ct. App. 1992) (parties to a void contract are left where they are found and cannot be enforced).

In its Complaint, Columbus Life asks this Court to apply the well-settled law prohibiting STOLI to the Policy at issue and thus recognize that it is void *ab initio*. Wilmington Trust may dispute whether this particular policy is illegal STOLI based on the record facts and circumstances, but Wilmington Trust has not challenged these basic tenets of Arizona law.

Instead, Wilmington Trust's Motion relies on the demonstrably false premise that specific terms of a void *ab initio* STOLI policy are somehow enforceable. Stated differently, Wilmington Trust argues that Columbus Life is barred from even attempting to show that the Policy is illegal and in violation of public policy because the terms of the policy prohibit any contest more than two years after issuance. The effect of such a rule, of course, would be to authorize investors to profit on STOLI—regardless of how egregious, offensive, or unlawful the circumstances of its issuance—so long as that wrongful conduct was successfully concealed through the contestability period. As a result, a finding in Wilmington Trust's favor on this issue would undermine Arizona's statutory and common-law prohibitions on policies issuing without an insurable interest, as well as rewrite Arizona public policy to favor human life wagering.

The vast majority of courts nationwide have rejected this argument, and for good reason. As the Delaware Supreme Court has succinctly explained,

> [I]f a life insurance policy lacks an insurable interest at inception, it is void ab initio . . . It follows, therefore, that *if no insurance policy ever legally came into effect, then neither did any of its provisions, including the statutorily required incontestability clause.* 'The incontestable clause is no less a part of the contract than any other provision of it.' As a result, the incontestability provision does not bar an insurer from asserting a claim on the basis of a lack of insurable interest.

*Price Dawe*, 28 A.3d at 1069 (emphasis added). Wilmington Trust fails to show that this Court should deviate from existing Arizona law or the jurisprudence of nearly every jurisdiction that has considered this issue, and the Motion must be denied accordingly.

**A.     Standard of Review**

5

"[M]otions for judgment on the pleadings are functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (citation and punctuation marks removed). However, "[f]ederal courts generally hesitate to grant judgment on the pleadings, because 'hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense.'" *Carrasco v. Fiore Enterprises*, 985 F. Supp. 931, 934 (D. Ariz. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Civil 2d § 1368 (1990)). In ruling on such a motion, "courts must consider the complaint in its entirety, as well as other sources, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Webb*, 999 F.3d at 1201 (quotation marks and ellipses omitted). "The motion will be granted only if a court finds that no issue of fact exists, and that the movant is entitled to judgment as a matter of law." *Barton & Assocs. Inc. v. Trainor*, 507 F. Supp. 3d 1163, 1166 (D. Ariz. 2020). Wilmington Trust fails to satisfy this burden.

### B. A Policy Lacking Insurable Interest at Inception is Void *ab initio*.

Columbus Life asserts that the Policy is void *ab initio*—that it never came into existence—because it was a STOLI policy procured by those who lacked an insurable interest in the insureds, the Petersons. This type of claim is based in Arizona's insurable interest statute and in Arizona common law, and it is simply not a "contest" which could be barred by a policy's incontestability provision. The Arizona Supreme Court long ago recognized that policies lacking insurable interest at inception are illegal and void as against the public policy of Arizona. *Gristy*, 203 P. at 572. As the court in *Gristy* explained: a "valid contract of insurance cannot legally be taken on the life of another by one who has no insurable interest in said life, because such a contract contravenes public policy." *Gristy* 203 P. at 572. *See id.* (finding policy satisfied the insurable interest rule and was not "a wagering or speculative contract" and "cannot be declared void because of the want of insurable interest" because the insured "was acting for himself and in good faith paid the premiums").

The current Insurance Statutes similarly provide that "no person shall procure or cause to be procured any insurance contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, at the time when the contract was made, an insurable interest in the individual insured." A.R.S. § 20-1104(A). Arizona courts have read Section 20-1104 "to embrace the common law definition of insurable interest," and an insurable interest is a necessary element to a legal insurance policy. *Steiniger v. Marmis*, 166 Ariz. 109, 110, 800 P.2d 975, 976 (Ct. App. 1990); *see Guaranteed Warranty Corp. v. State ex rel. Humphrey*, 23 Ariz. App. 327, 330, 533 P.2d 87, 90 (1975) (listing the common law elements for an insurance policy, including an insurable interest).[1]

### C. An incontestability clause in a void contract is not enforceable.

If a policy is procured without an insurable interest, it never came into existence and is simply void. "The general rule of law is . . . that whatever tends . . . to be violation of a statute, and whatever is against good morals, when made the subject of a contract, is against public policy and void. ***It is said that they are not contracts***, but unlawful agreements which are void in their inception." *San Francisco Sec. Corp. v. Phoenix Motor Co.*, 220 P. 229, 232 (Ariz. 1923) (emphasis added).

As in nearly all jurisdictions, Arizona law distinguishes between voidable contracts (which cause only private harm and may be enforced at the election of the aggrieved party), and void contracts (which harm the public and may *never* be enforced). *See, e.g.*, *Nat'l Union Indem. Co. v. Bruce Bros.*, 38 P.2d 648, 652 (Ariz. 1934) (citations removed) (right to terminate voidable contract may be waived, but a void contract "never had any legal existence or effect"); *Price Dawe*, 28 A.3d at 1067 (finding STOLI contracts are absolutely void, not merely voidable, and thus may never be enforced).

---

[1] Wilmington Trust thus errs in arguing (Br. 11) that the insurable interest requirement is a creature of statute passed in 1989. The common law required insurable interests one hundred years ago, and it continues to require an insurable interest today alongside the statutory insurance code.

7

A void contract cannot in any manner "have life breathed into it." *Chicago Title Ins. Co. v. Renaissance Homes, Ltd.*, 679 P.2d 517, 521 (Ariz. Ct. App. 1983). As a result, neither the mere passage of time nor the inclusion of certain contractual provisions are sufficient to revive an otherwise void *ab initio* policy. *E.g.*, *Davis v. Agua Sierra Resources, L.L.C.*, No. 1 CA–CV 06–0806, 2009 WL 2870070 (Ariz. Ct. App. Sept. 8, 2009). Indeed, Arizona will "refuse to allow the courts to be used to enforce a contract that is contrary to law and common sense," even if the parties did not clearly preserve the defense at an earlier stage of litigation. *Bank One v. Rouse*, 887 P.2d 566, 569 (Ariz. Ct. App. 1994). *See also Halt v. Sunburst Farms E.*, No. 1 CA–CV 12–0376, 2014 WL 173639 (Ariz. Ct. App. Jan. 16, 2014) (recognizing illegality may be raised at any time on appeal, by the parties, or by the court). Arizona courts continue to apply these rules today, recognizing that a "duty of the court, whenever the facts which render [a] contract void are called to its attention, to declare the law, and no party may recover in an action where the right of recovery must rest in some manner upon a void contract." *Id.* (quotation marks omitted) (citing *Nat'l Union Indemnity*).

This is particularly true if, as is the case here, the contract at issue violates principles of public policy. The Supreme Court of Arizona long ago established that "[n]o contractual consent, no statute of limitations, no laches nor estoppel can prevail against public policy, and any agreements made and any acts done in violation of it are necessarily void." *Red Rover Copper Co. v. Indus. Comm'n*, 118 P.2d 1102, 1107 (Ariz. 1941); *see also Elsen Dev. Co. v. Ariz. Sav. & Loan Ass'n*, 407 P.2d 930 (Ariz. 1965) ("Agreements to waive declarations of public policy are necessarily void."); *Olsen v. Union Canal & Irrigation Co.*, 119 P.2d 569, 573 (Ariz. 1941) (quoting and applying *Red Rover Copper*). For this reason, Arizona law instructs courts to leave the parties to a void contract where they were found rather than enforce any part of the document through which the contract was thought to arise. *E.g.*, *Landi*, 835 P.2d at 468.

Wilmington Trust claims that Columbus Life cannot seek a declaration of whether the Policy was issued with insurable interest (and thus whether it ever came into force) based

8

on a misreading of Arizona's Insurance Statutes. Section 20-1204 requires that a policy ***contain*** a provision that such a policy, "***after it has been in force***" for two years is "incontestable"; and Section 20-1217 describes the effect of such "[a] clause ***in any policy of life insurance***" to preclude a "contest of the validity of the policy." *See* A.R.S. §§ 20-1202 (requiring policies to "contain[] in substance" the provisions in 20-1202 to 12-1216), 20-1204, 20-1217 (emphasis added). Thus, both Sections 20-1204 and 20-1217 presuppose the existence of a lawful contract and the existence of a policy that ever came into force. Section 20-1217 does not independently bar a claim, it bars a "contest" of a policy pursuant to the clause within the policy. Where, as here, the Policy never came into force (because it is void at inception and never existed) than neither did its incontestability clause.

Wilmington Trust can identify no statutory basis for applying a contract provision in a void contract to bar a claim of illegality, and Columbus Life's claims here are fundamentally different from those more commonly made to contest insurance policies, such as rescission based on the insured making a material misstatement in the application. *See* Complaint, Ex. A, p.21 ("No statement will be used in contesting this policy unless it is in an application. . . .").

To the extent Wilmington Trust argues that this statute literally prohibits a contest regarding the policy's legality, Wilmington Trust ignores that Arizona courts will avoid literal statutory interpretations which "elevate[ ] form over substance and frustrate remedial purpose of a statute." *Transporting Renewable Res., Inc. v. Indus. Comm'n of Arizona*, 917 P.2d 272, 274 (Ariz. Ct. App. 1996); *see Garrison v. Luke*, 78 P.2d 1120, 1122 (Ariz. 1938) ("In determining this intent, we take into consideration many things—the language used, the object to be accomplished, whether a literal interpretation of the language will lead to an impossibility or an absurdity, the history back of the act, and numerous other matters, no one of which is absolutely controlling as to the intent."). Even plain and unambiguous language is only followed if "that meaning does not lead to an impossibility nor an absurdity such as cannot be contemplated the Legislature intended." *Garrison*, 78 P.2d at 1122. For example, the Ninth Circuit has found that, when the insurer invokes the lack of an insurable

interest, it is an "objection" to a claim by the policyholder, not a claim by the insurer to affirmatively void the policy or, in other words, to contest the policy. *In re Al Zuni Trading, Inc.*, 947 F.2d 1403, 1404 (9th Cir. 1991). Finding in favor of Wilmington Trust here would be absurd, as it would result in a finding that the statute had silently abrogated common law and statutory insurable interest requirements, as well as public policy in Arizona, all while ignoring that a void contract cannot in any manner "have life breathed into it." *Chicago Title,* 679 P.2d at 521.

D. **Wilmington Trust Incorrectly Relies on Cases Involving Merely Voidable Policies That Cause Private Harm**.

Wilmington Trust claims that several cases support its position that A.R.S. § 20-1217 encompasses a preclusion of an insurable interest challenge after two years. But none involve insurable interest and none involve an attempt to declare a policy void *ab initio* as against public policy. Instead, Wilmington Trust relies on cases where policies were obtained through garden-variety misrepresentations, rendering those policies void***able*** at the election of the insurer. *See Nat'l Life & Cas. Ins. Co. v. Blankenbiller*, 360 P.2d 1030 (Ariz. 1961) (garden variety medical misrepresentation); *Nat'l Producers Life Ins. Co. v. Rogers*, 442 P.2d 876 (1968) (insurer challenge to death benefit based on suicide exclusion was not subject to the incontestability provision); *Halstead Consultants, Inc. v. Cont'l Cas. Co.*, 891 P.2d 926, 930 (Ariz. Ct. App. 1994) (misrepresentation of employment fell within the "ordinary misrepresentations" for which incontestability clause was designed); *First Penn-Pac. Life Ins. Co. v. Evans*, No. AMD 05–444, 2007 WL 1810707, at *5–7 (D. Md. Jun. 21, 2007) (misrepresentation of economic circumstances)[2]; *Button v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 584, 585–89 (9th Cir. 1988) (insurer reduction of a disability claim based on a preexisting disease was not subject to the incontestability provision).

None of these insurer challenges concerned matters of public policy or illegality; they were contract disputes for which the insurer had to take steps to assert. This distinction is

---

[2] On appeal, the Fourth Circuit explained that the issue of contestability was not addressed in *First Penn-Pacific Life* because the insurable interest claim lacked merit. Here, Wilmington Trust has not challenged the insurable interest claim for failure to state a claim.

important, because "freedom of contract is a qualified, and not an absolute, right [because there] is no absolute right to do as one wills or to contract as one chooses" in the face of prohibitory law and public policy. *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 392 (1937). Were this Court to conclude otherwise, it would recognize a right in contracting parties to enter into an illegal agreement and exempt themselves from the force of Arizona law and public policy simply by including a term which would prohibit a challenge to the policy after a certain period of time by the parties or the successors. Sitting in diversity, this Court is not in a position to go so far in rewriting Arizona law.

### E. Wilmington Trust's Argument has been Rejected Repeatedly around the Country, and This Court Should Follow Suit.

Precedent nationwide and in this circuit supports the availability of STOLI challenges despite policies' incontestability provisions and related state statutes: "The majority of jurisdictions follow the view that an incontestable clause does not prohibit insurers from resisting payment on the ground that the policy was issued to one having no insurable interest—such a defense may be raised despite the fact that the period of contestability has expired." 17 Couch on Ins. § 240:82; *see Carter v. Cont'l Life Ins. Co.*, 115 F.2d 947, 948 (D.C. Cir. 1940) ("it is well settled that the incontestable clause does not prevent the insurer from asserting [the lack of an insurable interest]") (collecting cases); 6 A.L.R. 448 (originally published in 1920) ("It is held that, notwithstanding an incontestable clause, the insurer is entitled, after the expiration of the incontestable period, to defend on the grounds of want of insurable interest if the policy would otherwise have been void for lack of insurable interest."); 170 A.L.R. 1040 (originally published in 1947) (same).

Based on the well-established principle that a void contract is no contract at all, the vast majority of jurisdictions that have addressed the issue recognize that a void *ab initio* policy lacking an insurable interest can be challenged after the expiration of the two-year contestable period, because neither the policy, nor the contestable provision, ever come into

effect.³  Like Arizona, these jurisdictions involve legal regimes where (1) lack of an insurable interest voids a policy *ab initio*, and (2) state law mandates the inclusion of incontestability provisions in life insurance policies.  Courts in each of these jurisdictions found—and continue to find—that "the incontestability period [is] *directly contingent*, and predicated, upon the formation of a valid contract.  That is the view of the majority of state courts that have considered this question." *Lincoln Nat. Life Ins. Co. v. Joseph Schlanger 2006 Ins. Tr.*, 28 A.3d 436, 440 (Del. 2011) (emphasis in original); *see also Carton v. B&B Equities Group, LLC*, 827 F.Supp.2d 1235, 1245 (D. Nev. 2011) ("Because the Policies were void ab initio [for lack of insurable interest], the Policies were never truly in existence."); *Columbus Life Ins. Co. v. Wells Fargo Bank, N.A.*, No. 21 CVS 0052, 2021 WL 4024568 (N.C. Super. Ct. Sept. 2, 2021) ("*Trevathan*") (relying on nationwide jurisprudence and longstanding North Carolina precedent that a void contract is "no contract at all" to find that mere later-in-time passage of incontestability statute did no abrogate longstanding rule).

---

³ *See, e.g.*, *Bergman*, 208 A.2d 839 (N.J. 2019)*; Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490 (9th Cir. 1997) (California law); *Carter v. Cont'l Life Ins. Co.*, 115 F.2d 947, 947-48 (D.C. Cir. 1940) (District of Columbia law); *PHL Variable Ins. Co. v. Charter Oak Trust*, No. HHDCV106012621S, 2012 Conn. Super. LEXIS 1218, at *20-22 (Conn. Super. Ct. May 4, 2012) ("*Charter Oak*") (Connecticut law); *Ohio Nat. Life Assur. Corp. v. Davis*, No. 10 C 2386, 2011 WL 2680500, at *7 (N.D. Ill. July 6, 2011) ("*Davis*") (Illinois law); *Am. Gen. Life Ins. Co. v. Germaine Tomlinson Ins. Trust*, No. 1:08-cv-1747, 2010 U.S. Dist. LEXIS 103730, at **18-19 (S.D. Ind. Sept. 30, 2010) ("*Tomlinson*") (Indiana law); *Kentucky Cent. Life Ins. Co. v. McNabb*, 825 F. Supp. 269, 273 (D. Kan. 1993) (Kansas law); *Commonwealth Life Ins. Co. v. George*, 28 So. 2d 910, 912-14 (Ala. 1947) (Alabama law); *Home Life Ins. Co. v. Masterson*, 21 S.W.2d 414, 417 (Ark. 1929) (Arkansas law); *Price Dawe*, 28 A.3d at 1067-68 (Delaware law); *Wood v. N.Y. Life Ins. Co.*, 336 S.E.2d 806, 812 (Ga. 1985) (Georgia law); *Bromley's Adm'r v. Wash. Life Ins. Co.*, 92 S.W. 17 (Ky. Ct. App. 1906) (Kentucky law); *Bernier v. Pac. Mut. Life Ins. Co. of Cal.*, 139 So. 629, 632 (La. 1932) (Louisiana law); *Beard*, 550 A.2d at 689 (Maryland law); Nat'l *Life & Accident Ins. Co. v. Ball*, 127 So. 268 (Miss. 1930) (Mississippi law); *Wharton v. Home Sec. Life Ins. Co.*, 173 S.E. 338 (N.C. 1934) (North Carolina law); *Harris v. Sovereign Camp*, No. 3112, 1940 WL 2917, at *2 (Ohio Ct. App. Feb. 19, 1940) (Ohio law); *Ludwinska v. John Hancock Mut. Life Ins. Co.*, 178 A. 28, 30 (Pa. 1935) (Pennsylvania law); *Henderson v. Life Ins. Co. of Va.*, 179 S.E. 680, 692 (S.C. 1935) (South Carolina law).

For example, in *Fima*, the Ninth Circuit found that "California law provides that a policy which is void *ab initio* may be contested at any time, even after the incontestability period has expired. An insurance policy is void *ab initio* where the insured lacks an insurable interest. Thus, where, as in the present case, an incontestability clause is in effect, an insurance policy may be challenged only on the ground that it is void *ab initio* for lack of an insurable interest." 105 F.3d at 492 (citing *Crump v. Northwestern Nat'l Life Ins. Co.*, 45 Cal. Rptr. 814, 819 (1965) ("Incontestability does not apply to a policy which is void *ab initio*. The invocation of an incontestability provision presupposes a basically valid contract."); Cal. Ins. Code § 280 ("If the insured has no insurable interest, the contract is void.")). Note that California, like most states, has a similarly structured incontestability statute: "An individual life insurance policy delivered or issued for delivery in this state shall contain a provision that it is incontestable after it has been in force, during the lifetime of the insured, for a period of not more than two years after its date of issue, except for nonpayment of premiums . . . ." Cal. Ins. Code § 10113.5(a). This Court should follow the Ninth Circuit's lead—and that of jurisdictions nationwide—and deny Wilmington Trust's Motion as a meritless attempt to evade the law.

By way of additional comparison, Delaware law contains two incontestability statutes that are equivalent to ARS §§ 20-1204 and 20-1217—i.e., both on requiring the clause's inclusion and one describing the effect of the clause *within* the policy. *See* 18 *Del. C.* §§ 2908, 2917; *Price Dawe*, 28 A.3d at 1066. In this exact context, the Supreme Court of Delaware properly reasoned that by making both statutes contingent on provisions included in a policy, the state legislature clearly intended them not to operate when a policy is void ab initio:

> The defendant trusts argue that the plain language of section 2917 makes clear that an incontestability clause precludes any challenge to the enforceability of a life insurance contract after the two-year contestability period expires. This argument ignores the fact that the Delaware General Assembly chose to implement its goals through a mandatory contractual term, as distinguished from a direct ban on challenges to policy validity after a certain time. This creates an ambiguity in section 2917 on the meaning of the word "validity." We read the statute to be entirely subject to Delaware's

> existing law of contract formation. Put simply, under the Delaware statute, the incontestability provision should be treated like any other contract term. That reading is supported by the plain language of section 2908, which states that "[t]here shall be a provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than 2 years." These words accordingly make the incontestability period directly contingent on the formation of a valid contract. That is the view of the majority of state courts that have considered this question.

*Id.* at 1066-67. As in Delaware, this Court can and should find that the incontestability provision is no bar to a challenge on insurable interest and public policy grounds.

### F. Wilmington Trust's Statutory Claims are Fundamentally Flawed.

In an implicit attempt to argue against the reasoning above and the weight of authority, Wilmington Trust tries to distinguish Arizona's statutory scheme as unique in the breadth of its incontestability laws and their timing of passage. However, it is wrong on both counts.

*First*, Arizona's incontestability statutes are not broad in the sense that Wilmington Trust claims. Section 20-1204 mandates that "[t]here shall be a provision that the policy . . . shall be incontestable, except for nonpayment of premiums" and Section 20-1217 clarifies that such a provision "shall preclude only a contest of the validity of the policy, and shall not preclude the assertion at any time of defenses based upon provisions in the policy which exclude or restrict coverage." As explained above, these statutes act by mandating provisions in policies and thus they apply only to preclude actions by the insurer to affirmatively void the policy, such as by asserting a material misrepresentation; they do not apply to issues that render the policy void *ab initio*. In *Blankenbiller*, the case upon which Wilmington Trust primarily relies, the court opined on the breadth of the incontestability statute in the context of a specific issue: "Is the Incontestability Clause in the 'Benefit certificate' containing other and different grounds for contest than those set forth in the statute above valid or enforceable as to said other and different grounds?" 360 P.2d at 1031. The court's conclusion was no, "[t]he insurer cannot . . . make the incontestability clause

more onerous to the insured than the statute provides or include exceptions to incontestability other than those permitted by the statute." *Id.* at 1032. The assertion that a life insurance policy violates public policy and never came into force, however, is a fundamentally different kind of challenge that does not depend on a policy's provisions—it depends on the legal insufficiency of the policy's formation and the public policy against wagering contracts.[4]

*Second*, Arizona law would not recognize Sections 20-1204 and 20-1217 to implicitly abrogate the common law. "Although the legislature may, within constitutional limitations, change, supplement, or abrogate the common law, '[i]f the legislature fails to clearly and plainly manifest an intent to alter the common law, the common law remains in effect.'" *Andrews ex rel. Woodard v. Eddie's Place, Inc.*, 16 P.3d 801, 803 (Ariz. Ct. App. 2000); *see also Marana Unified Sch. Dist. No. 6 v. Aetna Cas. & Sur. Co.*, 162, 696 P.2d 711, 714 (Ariz. Ct. App. 1984) ("unless the legislature clearly indicates an intention to do so, its enactments shall not be construed so as to change established common law"); *Kilmer v. Hicks*, 529 P.2d 706, 707 (Ariz. 1974) ("Statutes are not to be construed as effecting any change in the common law beyond that which is clearly indicated. If possible, statutory enactments should be construed by courts as consistent with the common law." (citations omitted)). Wilmington Trust's allegedly "harmonious" reading of the statutes results in the preclusion of challenges based on insurable interest unless they were asserted within two years of the policy's inception. This flies in the face of the common law principle that such unlawful agreements "are void in their inception" rather than voidable upon timely action by the insurer. *San Francisco Sec. Corp.*, 220 P. at 232. Such attempts to invoke the mere later passage of incontestability statutes have been rejected in other jurisdictions. *See, e.g., Trevathan*, 2021 WL 4024568, at *7 ("The Court is not convinced . . . that the mere

---

[4] It is therefore somewhat perverse for Wilmington Trust to appeal to "the importance of the incontestability period providing confidence in the policy's validity to policy owners" [ECF No. 41, p.8] when they are asking this Court to enforce an illegal wagering contract that was likely intentionally transferred away from the initial owner after expiration of the contestability period.

enactment of the incontestability statute in 1995 reflects a legislative intent to abrogate the ruling in *Wharton* [allowing an insurable interest challenge despite an incontestability provision].").

*Third*, Wilmington Trust is wholly mistaken regarding the timing and context of the statutes at play. It claims that the Arizona legislature enacted the insurable interest statute in 1989 and "chose *not* to add an insurable interest-based exception to the incontestability statute . . . enacted in 1954, and 25 years after the [*Blankenbiller*] decision." Br. 11 (emphasis in original). However, the insurable interest statute was not passed in 1989. It was amended at that point solely to add Subsection 20-1104(C)(4), which provides for insurable interests for charitable organizations. Laws 1989, Ch. 27, § 1, eff. April 13, 1989. Instead, the statute was first included in the Insurance Statutes of 1954 and thus passed contemporaneously with the modern versions of the incontestability statutes Wilmington Trust relies on. Code 1939, Supp.1954, § 61-2304; Laws 1954, Ch. 64, Art. 11, § 4. Indeed, the Arizona Insurance Statutes have required a broad incontestability provision be included in insurance policies at least as far back as 1913, *i.e.*, since statehood. Civil Code 1913, Tit. 24, § 3453(3) (mandating a provision "[t]hat the policy . . . shall be incontestable after not more than two years from its date, except for non-payment of premiums and except for violation of the conditions of the policy relating to naval and military service in time of war. . .").

This true timing undermines Wilmington Trust's argument in several ways. First, it means that the legislature cannot have intended to abrogate the common law expressed in cases like *San Francisco Sec. Corp.* (1923) and *Gristy* (1922). After all, the legislature mandated a broad incontestability provision in insurance policies in 1913, *before* those cases were decided. Second, it means that any priority should be given to the insurable interest statute in any conflict as the one later in time (although no conflict exists). And third, it means that the legislature has never legislated in reaction to *Blankenbiller*.

**IV.   CONCLUSION**

16

For the foregoing reasons, this Court should deny Defendant Wilmington Trust, N.A., as Securities Intermediary's Motion for Judgment on the Pleadings.

DATED: January 14, 2022

                    GILES LAW, PLLC

                    By <u>/s/ Laura C. Martinez</u>
                         Nancy R. Giles (SBN 020163)
                         Laura C. Martinez (SBN 031486)
                         4808 N. 22nd St., Ste. 200
                         Phoenix, AZ 85016
                         Phone: 602-222-5501
                         Email: ngiles@gileslegal.com
                         Email: lmartinez@gileslegal.com

                         Michael J. Broadbent (*pro hac vice*)
                         COZEN O'CONNOR
                         1650 Market Street, Suite 2800
                         Philadelphia, PA 19103
                         Phone: 215-665-4732
                         Email: mbroadbent@cozen.com

                         Attorneys for Plaintiff Columbus Life Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System

By: /s/ Laura Daniel