**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Columbus Life Insurance Company, | No. CV-21-00734-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Wilmington Trust NA, | |
| Defendant. | |

Counter-Defendant Columbus Life Insurance Company ("Columbus") has filed a Motion for Summary Judgment (Doc. 126)[1] against Counterclaimant Wilmington Trust, N.A. ("Wilmington"), Securities Intermediary and policyholder for institutional investor and beneficiary Vida.[2] Columbus seeks summary judgment on Wilmington's counterclaim for bad faith in commencing a declaratory judgment action in this Court.[3] Columbus argues that Wilmington cannot satisfy the legal standard for the two-pronged tort of insurance bad

---

[1] The matter is briefed. Wilmington filed a Response (Doc. 133), and Columbus filed a Reply (Doc. 136).

[2] Wilmington requested oral argument on the matter. The Court finds that the issues have been briefed and oral argument will not aid the Court's decision. The request is therefore denied. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[3] Columbus also filed an unopposed Motion to Seal Exhibits 6, 7, 22–24, 26, 27, 29, 50–61 and 63 in support of its Motion for Summary Judgment. (Doc. 127). Finding compelling reasons, the Court will grant Columbus's Motion because it contains private financial information and is in accordance with the parties' protective order (Doc. 67).

faith claim under these circumstances. The Court agrees.

## I. Background[4]

Columbus is a life insurance company that sells insurance through writing agents. (Doc. 1 at 1). One of those agents was Reid Johnson ("Johnson"), owner of The Planning Group in Scottsdale, Arizona. (Doc. 1 at 3). On November 23, 2005, Howard and Eunice Peterson ("the Petersons") submitted an application to Columbus for a life insurance policy, underwritten by Johnson. (Doc. 105 at 24). The application listed the initial owner and beneficiary of the policy as the H & E Peterson Family Partnership, LLLP ("Partnership"). (*Id.* at 25.) The Petersons were listed as general and limited partners in the Partnership. (*Id.*) Altair, LLC was also list as a general partner in the Partnership. Johnson, the underwriting agent, was the President of Altair, LLC. (*Id.*) The specified face-value of the life insurance policy was $2.5 million dollars, and it had a clause that stated that Columbus could not contest the validity of the policy after a period of two years. (*Id.*) This clause is in accord with Arizona law, which states that after the two-year contestability period, an insurance policy can only be contested for non-payment of premiums. *See* A.R.S. § 20-1204. On October 23, 2005, after expiration of the incontestability period, the Partnership sold the policy to Lifetrust, LLC for the sum of $575,000.00. (*Id.*) The Partnership was paid $99,738.00 dollars of the sale proceeds and the rest of the money was paid directly to an annuity company called Liberty Life of Boston to buy an annuity to benefit the Petersons and/or their family members. (*Id.*) On May 2, 2006, Columbus received a change of ownership and beneficiary form executed by the Partnership requesting a change of record owner to Church Street Nominees Limited for the policy. (Doc. 119 at 10). This change was processed by Columbus on May 8, 2006. (Doc. 119 at 9,10).

Since 2013, Wilmington has held the policy in a securities account for its customer and beneficiary: Vida. (Doc. 105 at 28). On December 29, 2020, after the death of the

---

[4] Unless otherwise noted, the following facts are undisputed.

- 2 -

Petersons[5], Wilmington submitted a death claim on the policy to Columbus. (Doc. 119 at 13). Upon receipt of the death claim, Columbus initiated an investigation of the policy and designated the policy as Stranger-Originated Life Insurance ("STOLI"), or a policy where someone other than the original insured will benefit from the death payout on the policy. (Doc. 119 at 14). *See* A.R.S. § 20-443.02.[6]

On April 26, 2021, Columbus commenced this action seeking a declaratory judgment that the policy was void *ab initio*[7] under Arizona law because it lacked an insurable interest. (Doc. 1 at 6). An insurable interest is defined by statute as an insurance contract that is taken out for the benefit of the insured individual or close kin. *See* A.R.S. § 20-1104. Wilmington filed a Motion for Judgment on the Pleadings asserting that Columbus's claim was barred by Arizona's two-year contestability statute as well as the policy's contestability clause. (Doc. 41 at 1). Columbus' opposition argued that the policy was an illegal life-wager that lacked insurable interest at its inception. (*Id.*) Because no controlling legal precedent existed on the issue of whether an insurer could contest a policy for lack of insurable interest after expiration of the two-year contestability period, this Court then certified the question to the Arizona Supreme Court.[8] (Doc. 103 at 4).

On July 27, 2023, the Arizona Supreme Court answered the Court's certified question in the negative. As a result, Columbus agreed to dismiss its claims for declaratory judgment against Wilmington and paid the death benefit claim to Wilmington, with interest. Wilmington in turn agreed to dismiss its counterclaims for breach of contract, promissory estoppel, and unjust enrichment, but maintained its counterclaim for bad faith. (Doc. 111). (Doc. 108; Doc. 126 at 1; Doc. 112). Wilmington asserts that Columbus has

---

[5] Howard Peterson died on January 17, 2018, and Eunice Peterson died on May 1, 2020.

[6] This happens because these policies get sold on the market to third-party investors who pay premiums until the original insured dies and then they make a claim for the death benefit. In other words, the original insured and the beneficiary are not the same individual.

[7] Another way to say: invalid from the beginning.

[8] The exact question the Court certified was: Does Arizona law permit an insurer to challenge the validity of a life insurance policy based on a lack of insurable interest after the expiration of the two-year contestability period required by A.R.S. § 20-1204? (Doc. 103 at 4).

known since the beginning that the policy was a STOLI policy but failed to repudiate it and continued to accept the premiums on it. (Doc. 119 at 15, 16). In light of this knowledge, Wilmington says that Columbus had no reasonable basis to deny Wilmington's death claim payout and only did so in bad faith, knowing, or recklessly disregarding, that it had no reasonable basis for rejecting Wilmington's claim. (*Id.*)

## II.     Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. V. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of the suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answer to interrogatories, admissions, and affidavits that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute of a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of a non-movant is "to be believed, and all justifiable inferences ae to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## III.     Discussion

In moving for Summary Judgment, Columbus asserts that its handling of the claims process and investigation into the claim was reasonable. (Doc. 126 at 23). Columbus also

argues that it subjectively believed it had a reasonable basis to contest the claim by bringing this lawsuit and no reasonable juror could find otherwise. (*Id.*) As an initial point, the Court will first consider Columbus's argument that a tort of insurance bad faith claim requires a special relationship between the insurer and the insured. (Doc. 126 at 15).

### A. A Special Relationship is Not Required Under Arizona Law for the Tort of Bad Faith in an Insurance Dispute

To start with, Columbus contends that a special relationship is required under Arizona law between the insured and the insurer for a tort of bad faith claim to succeed. (Doc. 126 at 14, 15). Columbus argues that a special relationship is one where the main purpose for creating the contractual relationship is protection or security, not just a profit motive. (Doc. 126 at 14). According to Columbus, a non-commercial relationship is required between two parties, including the insured and the insurer, for the tort of bad faith claim to apply. (*Id.*) This is simply not a correct statement of the law. While Columbus is correct that the insurer does not owe fiduciary duties to the insured, the insurer nonetheless owes "duties of a fiduciary nature including equal consideration, fairness, and honesty." *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1168 (D. Ariz. 2014) (quoting *Zilisch v. State Farm Mutual Automobile Ins. Co.*, 995 P.2d 276, 279 (2000)). This is because inherent in every insurance contract is the implied covenant of good faith and fair dealing. *Noble v. Nat'l Am. Life Ins. Co.*, 624 P. 2d 866, 867 (Ariz. 1981).

Insurance contracts have a special nature, long recognized by American courts and the legislature. *Id.* An entire body of case and statutory law has been developed to regulate the relationship between the insurer and those it insures. *Id.* If the insurer can fail to pay a claim at whim, the entire purpose of insurance is defeated. *Id.* To prevent capriciousness on the part of the insurer, there is a legal duty that is implied in every insurance contract that the insurer must act in good faith in dealing with its insured. *Id.* And while the breach of contractual covenants normally sounds in contract, due to the special nature of the insurance contract, the insured may maintain an action in tort for a breach of the duty of good faith. *Id.*; *see also Rawlings v. Apodaca*, 726 P.2d 565, 579 (1986). Therefore, a tort

1 of bad faith claim is the proper action to bring under the circumstances, and Wilmington
2 has done just that.

### B. Wilmington's Bad Faith Insurance Claim

The tort of bad faith arises when an insurance company intentionally denies, fails to process, or fails to pay a claim without a reasonable basis for such action. *Sparks v. Republic National Life Ins. Co.*, 647 P.2d 1127, 1137 (Ariz. 1982). Reasonableness alone, however, is not the only standard for establishing bad faith. *Trus Joist Corp. v. Safeco Ins. Co. of America*, 735 P.2d 125, 133 (Ariz. Ct. App. 1986). If it were, the tort of bad faith would be reduced to a mere negligence action. *Id.* The plaintiff must also show the insurer knew it was acting unreasonably or with reckless disregard of the lack of a reasonable basis for denying the claim. *Noble*, 624 P.2d at 868. Therefore, the insurance tort of bad faith is a two-pronged test in which the insured must show that: (1) the insurer acted unreasonably in its handling of the insured's claim; and (2) that the insurer acted *knowing* it was acting unreasonably, or with such reckless disregard that knowledge may be imputed to it. *Golden Rule Ins. Co. v. Montgomery*, 435 F. Supp. 2d 980, 995 (D. Ariz. 2006).

**1. Whether Columbus' Claims Handling was Objectively Reasonable**

The first element of reasonableness in a bad faith claim is an objective test based on a negligence standard and considers whether the insurance company acted in a way that a reasonable insurer would under the circumstances. *Safeco*, 735 P.2d at 134. The scope of this duty must be measured by the facts and circumstances of each particular case. *Sparks*, 647 P.2d at 1137. Because each insurance company complies with its own claim processes, whether an insurer has acted objectively is not measured by prevailing industry customs and norms. *Id.* Instead, it must be determined whether, under the circumstances, an insurer's conduct is reasonable or "fairly debatable." *Montgomery*, 435 F. Supp.2d at 995. Whether the insurer's conduct amounted to a reasonable standard is sometimes a question of fact. *Id.* However, if no reasonable juror can conclude from the investigation, evaluation, and processing of the claim that the insurer acted reasonably, a court may make the determination as a matter of law. *Id.* (citing *Zilisch v. State Farm Mutual Automobile*

*Ins. Co.*, 995 P.2d 276, 280 (2000)). The appropriate inquiry then is "whether there is sufficient evidence from which a reasonable juror could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably . . ." *Montgomery*, 435 F. Supp. 2d at 996.

As proof that its claims process and investigation was reasonable, Columbus says it is uncontested that it conducted a prompt investigation after receiving the claim; it consulted outside counsel before initiating a lawsuit for a declaratory judgment; and it reasonably believed that its lawsuit was not barred by Arizona law. (Doc. 126 at 23, 24). Columbus argues that the policy had traditional hallmarks of STOLI as of its 2021 investigation: it had a high face-value; was elderly-insured; the owner of the policy was an entity and not an individual; and it was sold shortly after the expiration of the contestability period. (Doc. 126 at 25). Columbus says the law in Arizona as to whether an insurer could challenge a policy for lacking an insurable interest after the two-year contestability period in A.R.S. § 20-1204 was so unsettled that this Court certified the question to the Arizona Supreme Court. (Doc. 26 at 17). This certification, Columbus argues, shows that it had a "fairly debatable" and reasonable basis for concluding that it could challenge the policy as a STOLI policy and have it declared void from its issuance. (Doc. 136 at 5). Additionally, Columbus notes that 25 of the 30 jurisdictions that have been presented with this same issue of contestability past the two-year contestability period, all allow an insurer to contest the policy based on lack of an insurable interest. (Doc. 126 at 26).

Wilmington argues there are facts in the record that show Columbus acted in bad faith when it denied the claim and filed the lawsuit. It first points out that upon receiving the claim, Columbus did not contact Johnson or his employees as part of their investigation into the policy. (Doc. 133 at 11). That Columbus failed to contact the underwriter or his employees during its investigation does not render the investigation objectively unreasonable, however. Indeed, Wilmington's own expert testified that underwriting agents are not usually contacted when a policy is under suspicion because they are unlikely to admit their own wrongdoing. (Doc. 136 at 9). Notably, Wilmington does not explain

what additional information Mr. Johnson may have provided to Columbus—beyond what it already had—that would have assured the insurer that the policy was legitimate. *See Aetna Cas. & Sur. Co. v. Superior Ct. In & For Cnty. of Maricopa*, 778 P.2d 1333, 1336 (Ariz. Ct. App. 1989) ("An insurance company's failure to adequately investigate only becomes material when a further investigation would have disclosed relevant facts."). (Doc. 136 at 4). And indeed, flaws in the investigation process are insufficient to show objective bad faith on the part of the insurer. *Pace v. Insurance Co. of North America*, 838 F.2d 572, 584 (1988). If the insurer has an objectively reasonable basis for denying the claim, that is enough under the law. *Id.* Here, it is uncontested that the policy bore indicia of an illegal STOLI policy: high-face value, elderly insured, sold shortly after the contestability period expired. In any event, the Court does not find Columbus's failure to interview Mr. Johnson or his employees prior to filing this lawsuit objectively unreasonable.

Wilmington also argues that though the policy may have some STOLI indicators, there are facts in the record that show that Columbus' conclusion that the policy was STOLI was wrong. Wilmington points out that some facts suggest that the policy was taken out and structured as it was so the Petersons could sell it and get an annuity. (Doc. 133 at 1,5). In doing so, Wilmington suggests that because Columbus was wrong in its assumption that the policy was STOLI, it was unreasonable in challenging the claim. But even if the conclusion of the investigation ultimately favors the insured, if there existed a reasonable basis for denying the claim, an insurer cannot be held liable for the tort of bad faith. *See Aetna Cas. & Sur. Co. v. Superior Ct. In & For Cnty. of Maricopa*, 778 P.2d 1333, 1336 (Ariz. Ct. App. 1989) (""Whether the insurer ultimately loses its dispute with the insured is not important to the resolution of the bad faith issue."); *Pace v. Insurance Co. of North America*, 838 F.2d 572 (1st Cir. 1988); *Blue Cross & Blue Shield of Ky. V. Whitaker*, 687 S.W.2d 557 (Ky. Ct. App.1985). Here, it is uncontested that the majority of jurisdictions around the country have resolved the contestability of STOLI policies issue in favor of insurers, and that when Wilmington submitted its claim to Columbus, this issue was

unsettled law in Arizona. Having both a reasonable basis to believe the policy was STOLI and a reasonable basis from which to believe its validity could be challenged in the courts, Columbus was not objectively unreasonable in its treatment of Wilmington's claim. There is simply insufficient evidence from which a reasonable juror can conclude that Columbus acted unreasonably in its investigation and processing of the claim.

**2. Whether Columbus' Knew it Lacked a Reasonable Basis to Challenge the Claim, or Recklessly Disregard That it did**

Because the Court finds that no reasonable juror could find Columbus acted without an objectively reasonable basis in challenging Wilmington's claim, no reasonable juror could find that Columbus knew it lacked a reasonable basis to challenge the claim. Indeed, Columbus says it did not act unreasonably in filing suit because it did not know it could challenge the insurance policy for being STOLI before its investigation of the policy in 2021 and that in all other ways it did not knowingly or intentionally hinder the death claim payout. (Doc. 126 at 24). The Court will briefly address the parties' argument on this element.

Generally, an insurer's belief and intent are questions of fact for the jury. *Temple v. Hartford Inc. Co. of Midwest*, 40 F. Supp. 3d 1156, 1169 (D. Ariz. 2014). But a court may rule on the issue as a matter of law when no significantly probative evidence is offered that calls into question the insurer's subjective founded belief. *Id.*

Wilmington first asserts that Columbus knew it was acting unreasonably in challenging the policy payout because as far back as 2006, Columbus had flagged many of the policies issued by Johnson—including this one—on an internal list that was circulated within the company. (Doc. 133 at 5). Columbus, in response, states that the internal list was not a list of policies it knew to be STOLI policies. (Doc. 126 at 7). It explains that the list of 350 or so policies (which included some underwritten by Johnson) were policies that could *potentially* be STOLI: in other words, policies that were high-face value, elderly-insured, and policies that were sold soon after the contestability period had expired, but none of these policies were definitively determined by Columbus to be STOLI. (*Id.* at 14).

Columbus says it created the list to assess its relationship with the writing agents of these policies and that it paid the claims for 96% of them notwithstanding some of the STOLI markers. (*Id.* at 15). Columbus says it was not until 2018, when its claims executive, Justin Payne, attended a STOLI presentation about the legal landscape of bringing post-contestability challenges to policies that its understanding of what it could do with policies it believed were STOLI changed. (*Id.* at 15). After that presentation, Justin Payne reported this information to Lisa Fangman, Vice President of Operations, and the Legal Department, and thereafter, Columbus began to refine their list of policies that were potential STOLI. *Id.* at 16). However, Columbus asserts, and Wilmington shows no contrary evidence, that it did not turn its attention to the policy until the death claim came in on December 2020 and it conducted its investigation, with the help of outside counsel, on or about January 13, 2021. (*Id.* at 18,19). Under these circumstances, the Court finds that no reasonable juror could find that Columbus knew it did not have a basis to challenge the STOLI policy as far back as 2006.

Wilmington also says that summary judgment is improper because Columbus had pre-existing knowledge of the types of STOLI policies that Johnson was issuing. (Doc. 133 at 7). By way of evidence, Wilmington says a Columbus executive attended one of Johnson's seminars in 2002 and that Columbus paid his hotel and travel expenses when he promoted Columbus products. (Doc. 133 at 7). The Court finds this evidence insufficient proof of Columbus' knowledge that Johnson was selling STOLI policies. Mr. Johnson testified that he would never advertise the policies as STOLI at these seminars, and indeed refused to concede that his policies were STOLI at all. (Doc. 136 at 10). That Columbus chose to pay some business expenses for a high-performing agent, without more, is not significantly probative evidence of Columbus's knowledge of Johnson's wrongdoing. *See Temple*, 40 F.Supp.3d at 1169. In other words, insufficient evidence exists from which a reasonable juror would conclude that Columbus knew the policy was STOLI from its inception and did not act upon that information earlier, simply to retain the death benefit payout, as Wilmington alleges.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Seal Exhibits 6, 7, 22–24, 26, 27, 29, 50–61 and 63 in support of its Motion for Summary Judgment (Doc. 127) is **granted**. The Clerk is kindly directed to file under seal Exhibits 6, 7, 22–24, 26, 27, 29, 50–61 and 63 as currently lodged at Doc. 128.

**IT IS FURTHER ORDERED** that Plaintiff Columbus Life Insurance Company's Motion for Summary Judgment (Doc. 126) is **granted**. The Clerk of Court is kindly directed to enter judgment on Wilmington's bad faith insurance claim in favor of Columbus and terminate this matter.

Dated this 30th day of September, 2024.

Honorable Diane J. Humetewa
United States District Judge